IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES PENN, | ) | Civil Action No. 7:15-cv-00039 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| H. BREWER, | ) | By:   Hon. Michael F. Urbanski |
|     Defendant. | ) |        United States District Judge |

James Penn, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, naming correctional officer H. Brewer as the sole defendant. Plaintiff alleges that Brewer used excessive force against him in violation of the Eighth Amendment of the United States Constitution. Brewer filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court denies the motion for summary judgment because of disputes of material facts.

I.

During the morning of September 2, 2014, at Red Onion State Prison ("ROSP"), Brewer agreed to Plaintiff's request to take Plaintiff to a kiosk instead of to recreation, but by 4:00 p.m., no one had taken Plaintiff out of his cell. To get the attention of a building supervisor to complain about Brewer not taking Plaintiff out of the cell, Plaintiff put his arm inside the feeding box mounted on the outside of the door when staff distributed his dinner.[1] Plaintiff also jammed

---

[1] The "feeding box" or "tray slot box":
> [I]s a metal box with an open side placed against a cell door and another side that has a hinged lock to secure items inside. The tray slot box is affixed to the tray slot on a cell door by lowering the tray slot into the box and by sliding the top of the box over the tray slot latch. The tray-slot box then becomes a barrier between the inmate and staff despite the open tray slot on the cell door.

Karavias v. Virginia, No. 7:12-cv-00624, 2013 U.S. Dist. LEXIS 105071, at *3, 2013 WL 3879701, at *1 (W.D. Va. July 26, 2013) (Kiser, J.) (internal footnote omitted).

a book inside the feeding box to keep staff from sliding the tray slot closed and to prevent staff from removing the feeding box.

After responding to Plaintiff's cell, Brewer opened the feeding box and removed the book, but Plaintiff kept his arm inside the box and told Brewer to call a building supervisor. Brewer refused, telling Plaintiff, "Remove your arm out of the tray slot or I'm going to break it!" Plaintiff refused and kept his arm extended through the tray slot and inside the feeding box. Knowing Plaintiff's arm was inside the feeding box, Brewer moved to the side of the cell door and repeatedly kicked the tray slot, which rammed Plaintiff's arm with each kick. Once an officer administered a short burst of OC spray, Plaintiff removed his arm from the feeding box. A nurse arrived at the cell and noted in the medical record that Plaintiff sustained three abrasions to his left hand and arm. Plaintiff presently alleges he experienced pain from Brewer repeatedly kicking the tray slot against his arm.

Brewer explains that, after ordering Plaintiff to remove his arm from the box, Plaintiff threatened to throw "thirty day old piss" on Brewer if Brewer tried to close the tray slot. Brewer believed Plaintiff's alleged threat because he remembered that inmates in the same building had recently thrown bodily fluids on officers. Plaintiff denies that he had bodily fluids available to throw or threatened to throw bodily fluids. Plaintiff further argues that it was not even possible to throw anything at Brewer because the feeding box lid was "clearly locked and secured." In contrast, Brewer avers that the feeding box was unlocked and that Plaintiff had extended his hand outside the feeding box, "grab[bing] hold of the outside of the outer box, preventing me from securing the tray slot." (Brewer Aff. ¶ 5.) Brewer explains, "I did not intentionally injure offender Penn's arm or hand during the above incident. I attempted to secure the tray slot with

2

my foot in effort to prevent myself or other staff from being harmed by offender Penn who had threatened and attempted to throw urine on us." (Id. ¶ 8.)

Plaintiff exhausted administrative remedies, which deemed his complaint about Brewer's use of force as "founded." The ROSP Warden noted that, although "force was authorized due to [Plaintiff's] disruptive behavior, . . . the type of force used was unauthorized." (Pl.'s Resp. to Mot. for Summ. J., Ex. A at 2.)

**II.**

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity.[2] A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that

---

[2] The doctrine of qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The court considers two questions to resolve qualified immunity: whether the undisputed facts show that the government official's actions violated the plaintiff's constitutional rights, and whether the right at issue was "clearly established" at the time of the events. See, e.g., id. at 236.

3

demonstrate the existence of a genuine dispute of fact for trial.[3]  Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

Disputes of material facts preclude awarding qualified immunity or summary judgment.  At the time of the incident, the law was clearly established that a correctional officer violates the Eighth Amendment by inflicting unnecessary and wanton pain and suffering on a prisoner.  Whitley v. Albers, 475 U.S. 312, 320 (1986); see Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind).  The proper inquiry under the Eighth Amendment is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Whitley, 475 U.S. at 320-21.  This determination encompasses such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response.  Id. at 321.  Corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance[,]" and consequently, the court gives prison officials "wide-ranging deference in the adoption and execution of policies

---

[3] A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by a defendant's motion for summary judgment.  See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

The parties disagree whether the side of the feeding box facing staff was securely latched. If it was, as Plaintiff alleges, then there was no emergent need for Brewer to repeatedly kick the tray slot closed while knowing Plaintiff's arm remained through the slot. Paired with Brewer's alleged statement that he was going to break Plaintiff's arm, a jury could find that Brewer kicked the slot repeatedly into Plaintiff's arm as a malicious and sadistic use of force to inflict unnecessary and wanton pain and suffering because Plaintiff disobeyed Brewer's order and wanted to talk with Brewer's building supervisor. In light of his allegation of experiencing pain, the fact that Plaintiff may have only received a few abrasions from the tray slot being kicked into his arm repeatedly is not dispositive of the claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate . . . does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

However, if the feeding box was not secured, as Brewer alleges, then the force Brewer used to close the sliding tray slot that hit Plaintiff's arm may have been a good-faith effort to restore security and order. Some quantum of force was immediately necessary in light of Plaintiff's admitted defiance and Brewer's belief that he and fellow staff were at risk of having bodily fluids thrown at them through the unlocked or dislodged feeding box. Although Brewer could have chosen a number of different ways to mitigate the risk, corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Accordingly, the court must deny Brewer's motion for summary judgment due to disputes of material facts about whether the feeding box was secure. See Barkes v. First Corr.

5

Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) ("[A] genuine dispute of material fact will preclude summary judgment on qualified immunity.").

### III.

For the foregoing reasons, the court denies Brewer's motion for summary judgment, and the Clerk shall set this matter for a bench trial in the Big Stone Gap Division.

Entered: October 29, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge